# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| DAVID AND MARITA DELL'AQUILA, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 2:11-00047 |
| ) | Judge Sharp |
| LARRY HEAD AND JAMES WHITE, JR., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

This breach of contract and constructive fraud case was tried to a jury in Cookeville, Tennessee on September 25-27, 2012. The jury returned a verdict in favor of Defendants Larry Head and James White, Jr., and Plaintiffs David and Maria Dell'Aquila have filed a Motion for New Trial, or to Alter or Amend Judgment (Docket No. 92).[1] That Motion will be denied.

## I. BACKGROUND

The core of this case was Defendants' alleged breach of a contract to convey twelve hundred fifty acres of undeveloped land in Clay and Jackson counties to Plaintiffs by warranty deed, free and clear of all encumbrances.[2] The contract was entered into on December 17, 2009, and twice extended.

---

[1] Prior to the filing of this Motion, Defendants filed a Motion for Attorney's Fees and Expenses (Docket No. 83), prompting Plaintiffs to request that the Court refrain from ruling until they filed their post-trial motions. Now that Plaintiffs have filed their Motion for New Trial or to Alter or Amend and the Court herewith rules on the same, Plaintiffs will be afforded the opportunity to respond to Defendants' request for attorney's fees and expenses.

[2] Additionally, because Defendant White was allegedly told of a competing quit claim deed prior to entering into the contract but did not disclose its existence, Plaintiffs sought to hold both Defendants liable on a theory of constructive fraud.

1

The first extension was to permit a survey for title insurance purposes. When that survey revealed the existence of a quitclaim deed in favor of Robert and Cindy Byers, the contract was extended to permit Defendants to cure the defect and quiet title.

Plaintiffs' theory of the case, and the one presented at trial as it relates to the present Motion, was that Defendants failed to pursue the suit to quiet title in good faith. This was because, even though they filed suit against the Byers in the Clay County Chancery Court on August 3, 2010, to establish the ownership of the land, Defendants did not prosecute the matter to conclusion. Rather, and unbeknownst to Plaintiffs, Defendants settled the chancery court case by relinquishing the Jackson County property to the Byers, and keeping the Clay County property. This settlement occurred while the Byers' Motion for Summary Judgment was pending in the Chancery Court.

On June 20, 2011, Chancellor Robert E. Corlew denied the Byers' Motion for Summary Judgment, notwithstanding their argument that they and their predecessors had dutifully paid taxes on the property. At the time of the ruling, Chancellor Corlew was unaware of the settlement.

For their part, Defendants asserted before the jury that they did not breach the contract because it had a contingency clause requiring that title to the property be clear. In good faith, they filed suit to quiet title, but discovered during the pendency of that action that they could not remove the cloud on the Jackson County property because the Byers had paid the taxes as claimed. Moreover, Defendants asserted that they did not materially breach the contract because Plaintiffs had indicated during the course of their dealing with Defendant that they were willing to give up the Jackson County portion of the property.

At the conclusion of the trial in this case, the jury was given the standard Tennessee pattern instructions relating to breach of contract claims (including the impossibility of performance), as

well as instructions relating to constructive fraud. They were also provided a Verdict Form.

In the first part of the Verdict Form which related to the breach of contract claim, the jury was asked in Question 1 "have the plaintiffs shown that the defendants breached their contract to convey twelve hundred fifty (1250) acres to David and Marita Dell'Aquila by warranty deed?," to which they responded, "yes." In Question 2 the jury was asked, "have defendants shown by preponderance of the evidence that it was impossible to perform under the contract thereby excusing performance?" which the jury also answered in the affirmative. In the second part of the Verdict Form, the jury was asked whether Plaintiffs had proven by clear and convincing evidence that either or both of the Defendants committed constructive fraud. The jury answered this question in the negative.

## II. APPLICATION OF LAW

In diversity cases, federal procedural law applies in determining whether a party is entitled to a new trial. Armisted v. State Farm Mut. Auto. Ins. Co., 675 F.3d 989, 994 (6th Cir. 2012). Under Rule 59 of the Federal Rules of Civil Procedure, a court may grant a new trial after a jury verdict "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). The Sixth Circuit has "interpreted this Rule to require a new trial only 'when a jury has reached a 'seriously erroneous result' as evidenced by[ ] (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 405-06 (6th Cir. 2006) (quoting, Holmes v. City of Massillon, 78 F.3d 1041, 1045–46 (6th Cir.1996)).

In this case, Plaintiffs' sole challenge is to the jury's affirmative response to the impossibility

3

of performance question, with Plaintiffs arguing that "[n]o reasonable jury under the evidence adduced in this trial could have found that the performance by the defendants was rendered impossible except by their own conduct in voluntarily conveying fifty-five (55) acres of the property to Cindy and Robert Byers." (Docket No. 93). "But granting a new trial on th[e] ground" that the verdict is against the weight of the evidence "is a rare occurrence—it happens only when the verdict is said to be unreasonable" because the "jury has reached 'a seriously erroneous result.'" Armisted, 675 F.3d at 994-95. This is not that rare case warranting a new trial.[3]

Under Tennessee law, performance of a contract is impossible if "the promised performance was at the making of the contract, or thereafter became, impracticable owing to some extreme or unreasonable difficulty, expense, injury, or loss involved, rather than that it is scientifically or actually impossible." North Am. Capital Corp. v. McCantis, 510 S.W.2d 901, 905 (Tenn. 1974). Thus, even though the "rule is sometimes phrased in terms of 'impossibility,' it has long been recognized that it may operate to discharge a party's duty even though the event has not made performance absolutely impossible." Patterson v. Methodist Healthcare-Memphis Hospitals, 2010 WL 363314 at *7, n.9 (Tenn. Ct. App. Feb. 2, 2010) (quoting, RESTATEMENT (SECOND) OF CONTRACTS § 261 cmt. d (1981)).

At trial, Defendants introduced evidence from which the jury could determine that the contract was impossible to perform. The parties stipulated that (1) the Byers and their predecessors

---

[3] The Court notes that Plaintiffs' motion is alternatively styled as a motion to alter or amend the judgment. "A district court may alter or amend a judgment under Civil Rule 59(e) to correct a clear error of law; account for newly discovered evidence or an intervening change in the controlling law; or otherwise prevent manifest injustice." Heil Co. v. Evanston Ins. Co., 690 F.3d 722, 728 (6th Cir. 2012). Because Plaintiffs have not established any clear error of law committed by the Court, and because the Court finds that a reasonable jury could find that it was impossible to perform under the contract, Plaintiff are not entitled to have the judgment altered or amended.

in interest paid taxes for Tax Map 6, Parcel 13, Jackson County, Tennessee from 1990-2010; (2) Defendants and their predecessors in interest paid taxes for Tax Map 6, Parcel 3, Jackson County, Tennessee from 1990- 2010; and (3) Defendants and their predecessors in interest did not pay taxes for Tax Map 6, Parcel 13, Jackson County, Tennessee at any time from 1990 through 2011.

Tennessee law sets forth certain legal presumptions in relation to the payment or non-payment of real property taxes. Tenn. Code Ann. § 28–2–109 establishes the presumption that one "who pays taxes on property for twenty years continuously is the *prima facie* legal owner of that tract of land." Wilkerson v. McCoy, 2012 WL 3031142 at *6 (Tenn. Ct. App. July 26, 2012). The very next section, in turn, provides that anyone who claims a right to property but has "failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years, shall be forever barred from bringing any action in law or in equity to recover the same . . . in any of the courts of this state." Tenn. Code Ann. § 28-2-110(a).

"The question of where a boundary lies is generally a question of fact." Cass Rye & Assoc., Inc. v. Coleman, 2012 WL 4044862 at *2 (Tenn. Ct. App. Sept. 13, 2012). "[P]lats from a county assessor's office are admissible for the purposes of determining who paid taxes on a particular piece of real property," Jack v. Dillehay, 194 S.W.3d 441, 450 (Tenn. Ct. App. 2005), but because those plats go to the issue of "determining who paid taxes on a particular piece of real property," Cumulus Broadcasting, Inc. v. Shim, 226 S.W.3d 366, 381 (Tenn. 2007), the factfinder generally considers surveys. See, e.g., Sweeney v. Koehler, 2010 WL 4962888 at **1 & 4 (Tenn. Ct. App. Dec, 7, 2010) (affirming trial court's conclusion "based on competing surveys. . . that the statutory bar codified in Tenn. Code Ann. § 28–2–110 did not apply"); Woodard v. Webb, 1993 WL 541047 at *3 (Tenn. Ct. App. Dec. 30, 1993) (affirming chancellor's decree of boundary line "consistent with

5

the survey and the testimony of the plaintiffs' surveyor").

Here, in light of the stipulations of the parties, it was for the jury to determine the Byers had paid taxes on Parcel 13 for the statutory period, notwithstanding its location in Defendants' boundaries. There was evidence from which the jury could find that they had.

At trial, Defendants introduced a survey conducted by Ronald Taylor that depicted the property in dispute. They also introduced an overlay of the tax map that depicted Parcel 13. When the overlay was placed on top of the survey, it showed that Parcel 13 was within the disputed portion of Defendants' property but for which the Byers had paid taxes, or at least a reasonable jury could so find. See, Heaton v. Steffen, 2009 WL 2633050 at *7 (Tenn. Ct. App. Aug. 27, 2009) ("We believe even a layman's comparison of the tax map with the surveys shows that the defendant paid taxes on the disputed area and that the plaintiffs did not. Accordingly, we hold that the evidence preponderates in favor of a finding that the plaintiffs had not paid taxes on the disputed area for "a period of more than twenty (20) years" and were therefore barred from bringing an action to recover the Disputed area.").

A reasonable jury could also determine that because Defendants had not paid taxes on Parcel 13, they were statutorily barred from maintaining a quiet title action making it impossible to perform the contract, and that this possibility existed at the time of entry into the contract.

At trial, there was testimony from Defendant White that he and his co-defendant thought, at the time they entered into the second contract extension and filed the quiet title action in the Chancery Court, that the taxes they paid encompassed Parcel 13, and it was only thereafter that they discovered the contrary. As for the pending Motion for Summary Judgment, both Defendant White and Larry Burgess (the attorney for the Byers) testified that, at the time of the ruling, Chancellor

Corlew did not have the tax maps before him which, when overlayed on the survey, showed that the Byers had paid the taxes on Parcel 13.

While Plaintiffs' motion is couched in the form of a request for a new trial, the arguments they make and relief they seek sound more in the nature of a request for a directed verdict/judgment as a matter of law. This is borne out by their request "that the verdict in response to question 2 be set aside," with the "result of this finding [being] that defendants have been found guilty of breach and the plaintiffs are entitled to a hearing on damage." (Docket No. 93 at 2). It is also borne out by the penultimate paragraph in their brief where they assert that "as a matter of law and under the undisputed facts of this case, the defense of impossibility of performance could not have been reached by any reasonable jury[.]" (Id. at 8-9).

The Court has already found that there was evidence from which a reasonable jury could find in favor of Defendants and it necessarily follows that judgment as a matter of law is not appropriate. It is also inappropriate for another reason – Plaintiffs failed to move for judgment before the case was sent to the jury as required by Fed. R. Civ. P. 50. The Sixth Circuit has explained:

> Parties who think there is just one reasonable way to assess the factual sufficiency of a claim . . . [must allow] . . . the trial judge who had a ring-side view of the witnesses to make a first cut on whether one side or another must prevail on the claim. . . . In the context of a jury trial, the Federal Rules of Civil Procedure tell parties to speak up at two times if they want the court to resolve the claim as a matter of law. They must move for judgment as a matter of law before the claim goes to the jury, see Fed. R. Civ. P. 50(a), and they must renew the motion (or seek a new trial) after the jury issues its verdict, see Fed. R. Civ. P. 50(b); Fed. R. Civ. P. 59.

Maxwell v. Dodd, 662 F.3d 418, 420 -421 (6th Cir. 2011).

Finally, insofar as Plaintiffs may be asserting that the impossibility of performance question should not have been sent to the jury, the Court notes that, not only did Plaintiffs file joint jury instructions which included a charge on that issue, counsel for Plaintiffs conceded that Defendants

7

were entitled to jury instructions containing the two statutes governing the presumptions about the payment or non-payment of property taxes. Such actions raise the possibility that any error was invited. See, United States v. Thompson, 2012 WL 6621353 at *2 (6th Cir. Dec. 20, 2012) (setting forth the contours of the invited error doctrine); Lee v. Metro. Gov't of Nashville and Davidson County, 432 Fed. Appx. 435, 452 (6th Cir. 2011) (applying the "doctrine when a party requests one jury instruction and then later complains about that very instruction on appeal").

### III. CONCLUSION

On the basis of the foregoing, Plaintiffs' Motion for New Trial, or to Alter or Amend Judgment (Docket No. 92) will be denied.

An appropriate Order will be entered.

*Kevin H. Sharp*
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE